**POTTER HANDY LLP**
Mark D. Potter (SBN 166317)
mark@potterhandy.com
James M. Treglio (SBN 228077)
jimt@potterhandy.com
Isabel Rose Masanque (SBN 292673)
isabelm@potterhandy.com
100 Pine St., Ste 1250
San Francisco, CA 94111
Tel: (415) 534-1911
Fax: (888) 422-5191

Attorneys for Plaintiff

**UNITED STATES DISTRICT COURT**

**WESTERN DISTRICT OF WASHINGTON AT SEATTLE**

| | |
|---|---|
| DEVIN ROSE, an individual and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>AMAZON.COM, INC., a Delaware Corporation; and DOES 1 through 100, inclusive,<br><br>Defendants. | **CASE NO. 2:26-cv-01508-BAT**<br><br>**CLASS ACTION**<br><br>**FIRST AMENDED CLASS COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF (FOR VIOLATIONS OF:**<br><br>**(1) THE FALSE ADVERTISING LAW (Business and Professions Code § 17500, et seq.,);**<br>**(2) CALIFORNIA UNFAIR COMPETITION LAW, Cal. Bus. & Prof. Code §17200, *et seq.*; and**<br>**(3) WASHINGTON CONSUMER PROTECTION ACT, RCW §§ 19.86.020, 19.86.090, and 19.86.093**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff Devin Rose ("Plaintiff"), individually and on behalf of classes of similarly situated individuals (defined below), brings this action against Amazon.com, Inc. ("Amazon" and/or "Defendant") and Does 1 through 100 (collectively, "Defendants").

## INTRODUCTION

1. This is a consumer-protection class action arising from Amazon.com, Inc.'s unfair and deceptive conduct in administering its marketplace refund and A-to-z Guarantee process.

2. Amazon promotes its marketplace as backed by Amazon-administered post-purchase protections and, when consumers contact Amazon about seller disputes, Amazon controls the claim status, refund processing, support-request escalation, call records, and internal disposition of those claims.

3. Plaintiff does not allege that Amazon's written A-to-z terms promise automatic refunds to everyone. Instead, Plaintiff alleges that Amazon engaged in a deceptive and unfair course of conduct in Plaintiff's individual claim by representing that Plaintiff's claim had been approved, or that Amazon would issue a full refund, by instructing Plaintiff to stop dealing with the seller, by telling Plaintiff that the sofa did not need to be returned and could be discarded or donated, and by failing to pay the promised refund after Plaintiff irreversibly relied on those instructions.

4. Plaintiff purchased the URRED Modular Sectional Sofa Comfy Cloud Couch, Modern Chenille Sofa Sleeper Deep Seat Couches with Ottoman/Pillows for Living Room (Blue, 82.6" – L Shape) through Amazon's online marketplace on June 7, 2025, order number 111-1030419-3249803, for a total charge of $581.66. Plaintiff believes the sofa was delivered on or about June 10, 2025. After assembly and attempted use, Plaintiff discovered that the sofa was defective and/or not as described: the back support cushions were attached only by a thin Velcro strip at the bottom of each cushion, the back cushions tilted forward and pressed into the person sitting on the sofa, and the seat cushions collapsed, crushed in, felt hollow or underfilled, compressed under light weight, and caused the user to sink and slide forward.

5. Plaintiff sought relief through Amazon's marketplace dispute process. Amazon's own records later reflected that "the claim was filed," and Amazon's records also reflected earlier

contacts on July 17, 2025 and August 11, 2025 regarding the order and the product's defective or damaged condition.

6. On or about September 3, 2025, during a telephone call with an Amazon customer-service representative whose name is presently unknown, but whose identity and call record are within Amazon's possession, Plaintiff was told in substance that he met the requirements for Amazon's A-to-z Guarantee, that Amazon would issue a full refund within approximately 72 hours or 3–4 days, that Plaintiff should not communicate with the seller any further, that the sofa did not need to be returned, and that Plaintiff could donate or otherwise dispose of it.

7. During that same call, Plaintiff offered to allow Amazon or the seller to retrieve the sofa. Amazon, through its representative, declined pickup or return and told Plaintiff that return or pickup would not be necessary because a refund would be issued within a few days.

8. Plaintiff reasonably relied on those statements because Amazon represented that it had taken over the matter, Amazon controlled the internal claim and refund process, and Amazon affirmatively told Plaintiff what to do with the item.

9. On or about September 4, 2025, approximately the day after the September 3, 2025 call, Plaintiff had the sofa taken out and left on the sidewalk near his apartment building where discarded furniture is usually left. Plaintiff did so in reliance on Amazon's instructions. Plaintiff would have kept the sofa had he known Amazon would not issue the promised refund.

10. After Plaintiff no longer possessed the sofa, Amazon sent Plaintiff an A-to-z Guarantee email dated September 8, 2025 stating that Amazon had investigated Plaintiff's claim on order 111-1030419-3249803 and denied the request because Plaintiff was "not eligible for a refund under the A-to-z Guarantee." Amazon did not provide a specific factual reason in that notice, and Plaintiff received no refund.

11. On October 9, 2025, Plaintiff called Amazon again. The frontline Amazon representative identified himself as "Rick." During that call, Rick stated that Amazon's system reflected that "the claim was filed" and reflected prior contacts on July 17, August 11, and September 3, but Rick also stated that there were no notes from the September 3 call.

12. During the same October 9, 2025 call, Plaintiff told Rick that the prior Amazon representative had told him the claim had been approved, that Amazon would issue a full refund within a few days, that Plaintiff should stop dealing with the seller, and that Plaintiff could donate or get rid of the sofa because return was unnecessary.

13. Rick apologized, described the matter as serious, stated that he was documenting the issue, and transferred Plaintiff to a supervisor.

14. The supervisor, who identified himself phonetically as "Lakhbir," initially stated that he did not see any A-to-z claim, then asked Plaintiff to email proof, then acknowledged the matter and stated that he would "raise the support request" from his manager's desk.

15. During the October 9, 2025 call, Lakhbir also confirmed that the September 3 call concerned the same sofa, lasted approximately twelve minutes, and had no specific notes.

16. At the conclusion of the October 9, 2025 call, Lakhbir told Plaintiff in substance that Amazon had raised a support request for the refund, that Plaintiff should wait about two days, and that Lakhbir would call Plaintiff back with an update.

17. On October 9, 2025, Amazon sent Plaintiff a customer-service email stating: "raised a support request for the refund from my manager's desk, kindly wait 48-72hrs for the update and i have took a follow up to call back and give you the update."

18. Plaintiff did not receive the promised follow-up and did not receive the promised refund.

19. On October 15, 2025, Plaintiff emailed Amazon: "I still have not received a reply." Amazon still did not issue the refund.

20. Amazon's conduct injured Plaintiff in his business or property. Plaintiff lost the $581.66 purchase price and lost possession of the sofa after disposing of it in reliance on Amazon's statements and instructions.

21. This action seeks relief under California's False Advertising Law, California's Unfair Competition Law, and Washington's Consumer Protection Act for Plaintiff and similarly situated consumers injured by materially similar Amazon refund, return, and disposal representations.

**JURISDICTION AND VENUE**

22. This Court has subject-matter jurisdiction under the Class Action Fairness Act, 28 U.S.C. § 1332(d), because this is a class action in which the proposed class contains at least 100 members, minimal diversity exists, and the aggregate amount in controversy exceeds $5,000,000, exclusive of interest and costs.

23. Venue is proper in this District under 28 U.S.C. § 1391 because Amazon.com, Inc. resides in this District and maintains its principal place of business in Seattle, Washington, and because a substantial part of the acts, omissions, policies, decisions, and claim-handling conduct complained of herein were directed from, occurred in, or were controlled from this District.

**PARTIES**

24. Plaintiff Devin Rose is, and at all times alleged in this Complaint was, an individual and a resident of Studio City, California. Plaintiff makes his permanent home in California and intends to remain in California.

25. Defendant Amazon.com, Inc. is a Delaware corporation with its principal place of business in Seattle, Washington. Amazon operates the Amazon online marketplace and administers, controls, or materially participates in the marketplace refund, A-to-z, customer-service, support-request, and claim-escalation processes described in this Complaint.

26. The true names and capacities, whether individual, corporate, associate, or otherwise, of Defendants sued herein as DOES 1 through 100, inclusive, are currently unknown to the Plaintiff, who therefore sues the Defendants by such fictitious names under the Code of Civil Procedure § 474. Each of the Defendants designated herein as a DOE is legally responsible in some manner for the unlawful acts referred to herein. Plaintiff will seek leave of court and/or amend this complaint to reflect the true names and capacities of the Defendants designated hereinafter as DOES 1 through 100 when such identities become known. Any reference made to a named Defendant by specific name or otherwise, individually or plural, is also a reference to the actions or inactions of DOES 1 through 100, inclusive.

27. At all times herein mentioned, Defendants, and each of them, were an agent or joint venturer of each of the other Defendants, and in doing the acts alleged herein, were acting with the

course and scope of such agency. Each Defendant had actual and/or constructive knowledge of the acts of each of the other Defendants, and ratified, approved, joined in, acquiesced and/or authorized the wrongful acts of each co-defendant, and/or retained the benefits of said wrongful acts.

28. Defendants, and each of them, aided and abetted, encouraged and rendered substantial assistance to the other Defendants in breaching their obligations to Plaintiff and the Class, as alleged herein. In taking action, as particularized herein, to aid and abet and substantially assist the commissions of these wrongful acts and other wrongdoings complained of, each of the Defendants acted with an awareness of his/her/its primary wrongdoing and realized that his/her/its conduct would substantially assist the accomplishment of the wrongful conduct, wrongful goals, and wrongdoing.

## SUBSTANTIVE ALLEGATIONS

29. Amazon markets its online marketplace as one in which consumers can buy from third-party sellers while still relying on Amazon-administered customer support and protection mechanisms.

30. Amazon's claim and refund systems are centrally controlled. Amazon controls whether a matter is coded as an A-to-z claim, refund escalation, support request, or other internal status; controls the content of or access to its call logs and recordings; controls whether and when a refund is actually processed; and controls the standardized customer-service workflows used to communicate with consumers

31. Those matters are not visible to consumers. Consumers cannot independently verify whether Amazon has actually approved a claim, completed internal refund processing, or created a support request. Consumers must rely on what Amazon representatives tell them.

32. Plaintiff purchased the URRED Modular Sectional Sofa Comfy Cloud Couch, Modern Chenille Sofa Sleeper Deep Seat Couches with Ottoman/Pillows for Living Room (Blue, 82.6" – L Shape) through Amazon on June 7, 2025, order number 111-1030419-3249803. The Amazon order confirmation identified the item price as $529.99 and the total charge as $581.66. The order confirmation further stated that payment was processed by Amazon Payments, Inc.

33. Plaintiff ordered the sofa in reliance on Amazon marketplace protections, including

the A-to-z Guarantee, which Plaintiff considered a prerequisite to ordering in case anything was wrong with the item.

34. The sofa was a large furniture item. On June 7, 2025, seller URRED messaged Plaintiff that, "[d]ue to the large size of the product," the sofa was shipped in two FedEx boxes, with tracking numbers 881858069381 and 881858068959.

35. Plaintiff requested a return through Amazon. On June 11, 2025, Amazon sent Plaintiff an email stating, "We've accepted your return request," and that once URRED received the item, Amazon would issue a refund to Plaintiff's original payment method.

36. The return summary identified order number 111-1030419-3249803, required the item to be sent by July 17, 2025, identified the return ship method as "Self ship," and identified one sofa to be returned.

37. The return instructions stated that, for returns due to product quality and logistics timeliness, the seller would provide a prepaid return label and Plaintiff would not need to bear the freight. Neither the seller nor Amazon offered pickup to Plaintiff's knowledge.

38. After assembly and attempted use, Plaintiff discovered that the sofa was not functional as ordinary seating. The back support cushions were attached only by a thin strip of Velcro located at the bottom of each cushion. The cushions tilted forward and pressed into the person sitting on the sofa. The seat cushions collapsed and crushed in, felt hollow or underfilled, compressed under light weight, and caused the user to sink and slide forward.

39. Plaintiff initially waited because the cushions had arrived vacuum-sealed and he assumed they needed time to expand. Instead, the condition worsened: the cushions became increasingly flattened and collapsed whenever anyone attempted to sit on them.

40. On August 11, 2025, Amazon Customer Service contacted URRED regarding order number 111-1030419-3249803 and stated that the customer wanted to return the item because, according to the customer, "you will slip on the sofa and will not be able to sit on it.".

41. URRED responded that shipping costs for "non-quality-related refunds" would be borne by the customer and might exceed the cost of the product, then asked Plaintiff to provide further details and suggested possible solutions including reshipping parts or partial refunds.

42. On August 16, 2025, Plaintiff documented the defects through Amazon's messaging system. Plaintiff wrote that the cushions did not stay in place, the seat and back cushions were attached only by "extremely weak velcro strips," the cushions constantly shifted or fell with minor movement, the sofa was virtually unusable for sitting or reclining, the listing did not disclose that Velcro would be the sole method of securing the cushions, the seat cushions were nearly hollow and lacked meaningful support, the sofa caused sliding and tilt, and the back cushions lacked structural integrity.

43. On August 19, 2025, Plaintiff sent additional messages and photos stating that the back cushions were not secured well, tilted and fell over due to a Velcro strip running only along the bottom, that Plaintiff slid off the couch due to hollow cushions and poor design, that the cushions tilted forward and downward, that the cushions did not stay in place and collapsed, and that large gaps showed the cushions did not stay against the sofa.

44. URRED responded by asserting the sofa was "cloud-style," not defective, and instructed Plaintiff that he could prop the cushions diagonally against the backrest to form a triangular structure. URRED later stated that the back cushion height was a "safety design," that Velcro increased friction, that many customers prefer movable cushions, and that URRED had "not fixed the cushion to the backrest.".

45. URRED required return in original condition and original packaging. On September 4, 2025, URRED offered a $30 refund so Plaintiff could purchase a "properly sized Velcro piece" to resolve what URRED described as a "mismatch issue."

46. Plaintiff submitted an Amazon marketplace claim concerning the defective sofa. Plaintiff's A-to-z claim records reflect a claim request submitted on July 17, 2025 for "Defect," with photos and details of the defects.

47. The claim timeline reflects multiple July 17, 2025 "More detail required" and "Under review" entries, closed statuses on July 21 and July 27, more detail added on August 11, denial on August 13, an appeal filed and under review on August 26, and appeal denial on September 8, 2025.

48. On September 3, 2025, Plaintiff spoke by telephone with an Amazon customer-service representative regarding the sofa. The call occurred on Plaintiff's cell number, (818) 744-

1767, in the evening Pacific time.

49. During that September 3 call, Plaintiff was told in substance that he met the requirements for Amazon's A-to-z Guarantee, that he would receive a refund within approximately 72 hours or 3–4 days, that he should not contact the seller any further, that it was not necessary to send the item back, and that he could donate the item.

50. Plaintiff offered to allow Amazon to arrange pickup of the sofa, but Amazon declined.

51. In reliance on Amazon's September 3 statements and instructions, Plaintiff had the sofa taken out and left on the sidewalk near his apartment building where discarded furniture is typically left. Plaintiff did so approximately the day after the September 3 call. Plaintiff would have kept the sofa if he had known Amazon would not issue the promised refund.

52. On September 8, 2025, after Plaintiff had already disposed of the sofa, Amazon sent an A-to-z Guarantee denial email stating that Amazon had investigated the claim on order 111-1030419-3249803 and denied the request because Plaintiff was "not eligible for a refund under the A-to-z Guarantee."

53. Amazon did not provide a specific factual reason in that denial notice. Plaintiff received no refund or credit.

54. On October 9, 2025, Plaintiff called Amazon again. Amazon representative Rick confirmed that Amazon's system reflected prior activity concerning the sofa, including that "the claim was filed," a July 17 contact, and an August 11 contact concerning product damage or defect.

55. Rick also confirmed that Amazon's system reflected a September 3 call, but stated there were no notes from that call. When Plaintiff asked whether the absence of notes was unusual, Rick agreed that it was.

56. Plaintiff told Rick that the September 3 Amazon representative had told him the A-to-z claim was approved or that the refund would issue, that he would receive a full refund within a few days, that he did not need to return the sofa, that he could get rid of or donate the sofa, and that he should not communicate with the seller further. Rick apologized, stated that the matter was serious, documented the issue, and transferred Plaintiff to a supervisor.

57. The supervisor, Lakhbir, initially stated that he did not see an A-to-z claim and asked Plaintiff to email proof. Plaintiff responded to Amazon's email and attached a screenshot of the September 8 A-to-z denial notice. Lakhbir acknowledged receipt of the screenshot.

58. Lakhbir confirmed that the September 3 call concerned the same sofa, lasted approximately 12 minutes, and had no specific notes. Lakhbir stated that Amazon had access to the call for later review but could not review it during the live call.

59. Lakhbir then raised a support request. On October 9, 2025, Amazon sent Plaintiff an email stating: "raised a support request for the refund from my manager's desk," instructing Plaintiff to wait "48-72hrs for the update," and stating that Lakhbir had taken a follow-up "to call back and give you the update." Amazon did not provide the promised follow-up, did not call Plaintiff back with an update, and did not issue the refund. On October 15, 2025, Plaintiff emailed Amazon: "I still have not received a reply."

60. Plaintiff's injury is economic. Plaintiff lost the $581.66 purchase price and lost possession of the sofa after disposing of it in reliance on Amazon's statements. Plaintiff does not seek classwide recovery for personal injury, emotional distress, or other nonproperty damages.

61. Amazon's deceptive conduct toward Plaintiff occurred in the conduct of Amazon's trade or commerce and through Amazon's centralized marketplace and customer-service systems.

62. The challenged conduct was not a one-off manual entry error apparent to Plaintiff. Amazon's claim-handling records, support requests, call logs, recordings, and refund systems are all in Amazon's control, and Amazon communicated through those systems in a standardized customer-service environment.

63. Amazon's conduct has the capacity to injure other consumers because Amazon handles marketplace disputes and refund communications through standardized policies, common systems, customer-service representatives, and supervisory escalation processes.

64. Upon information and belief, Amazon uses standardized and centrally controlled customer service and support request workflows in connection with marketplace disputes, including A-to-z-related issues, and those workflows can result in common representations about refund status, return obligations, and item disposal.

65. Amazon's conduct has the capacity to injure other consumers because Amazon handles marketplace disputes, return communications, A-to-z issues, refund status communications, call records, and support request escalations through centralized and standardized systems.

66. Discovery is expected to show whether other consumers received materially similar refund, return, or disposal representations through those systems and whether Amazon's internal records contain materially similar nonpayment, missing-note, escalation, or failed-callback events.

67. Plaintiff wants to continue using Amazon's marketplace if Amazon is required to provide truthful, nondeceptive refund and disposal guidance and to honor the refund commitments it communicates to consumers.

68. Absent injunctive relief, Plaintiff cannot rely on Amazon's marketplace-protection and refund representations because Amazon has already shown that it may tell consumers to dispose of goods and then withhold the promised refund.

69. Accurate post-purchase refund, return, and item-preservation representations are material to reasonable consumers because consumers cannot see Amazon's internal claim status, refund authorization, call notes, support-request records, or escalation decisions.

**<u>Consumer Reliance on Accurate Refund Representations and Post-Purchase Practices</u>**

70. When Amazon tells a consumer that a refund will issue, that return is unnecessary, and that an item may be discarded or donated, those statements are material because disposal of the product is irreversible and can eliminate the consumer's ability to return the item, preserve evidence, mitigate loss, or pursue alternative remedies.

71. Plaintiff relied on Amazon's September 3 statements for those reasons. Plaintiff had already attempted to use Amazon's return and claim process, had documented defects through Amazon's messaging system, and had been told by Amazon that he met the requirements for the A-to-z Guarantee and would receive a refund within a few days.

72. Consumers in Plaintiff's position must rely on Amazon's refund and return representations because Amazon controls the internal claim status, call records, support requests, refund processing, and supervisory escalations.

73. Amazon's conduct was deceptive and unfair because Amazon represented that Plaintiff could safely relinquish the sofa while withholding the material risk that Amazon would later deny or fail to pay the refund after the sofa was gone.

74. Amazon's conduct caused economic injury because Plaintiff lost both the $581.66 purchase price and possession of the sofa after following Amazon's instructions.

75. Amazon's standardized marketplace and customer-service systems give the challenged conduct the capacity to injure other consumers who receive materially similar refund, return, or disposal representations.

76. Plaintiff seeks relief requiring Amazon to provide truthful, nondeceptive claim-status, refund-status, return, and item-preservation guidance and to honor refund commitments communicated to consumers before instructing them to relinquish disputed items.

77. As a direct and proximate result of Amazon's unlawful conduct, Plaintiff and members of the proposed Class suffered economic loss, including the loss of purchase prices for goods they no longer possess, as well as additional time and expense attempting to obtain refunds that were promised but never delivered. Amazon has been unjustly enriched by retaining these funds while depriving consumers of both their property and the protections it advertised.

**California Law Governing Consumer Advertising and Unfair Business Practices**

78. California has enacted comprehensive statutory protections to ensure that consumers are not misled by false or deceptive business practices. The False Advertising Law ("FAL"), Business and Professions Code section 17500 et seq., and the Unfair Competition Law ("UCL"), Business and Professions Code section 17200 et seq., prohibit businesses from making untrue or misleading statements, omitting material facts, or engaging in unfair practices in connection with consumer transactions.

79. These statutes apply broadly to all representations made to consumers, including statements made on websites, in help pages, in customer service communications, and in post-purchase dispute resolution programs. California law requires that such representations be truthful, accurate, and not likely to mislead a reasonable consumer acting under the circumstances.

80. Amazon's marketplace protection and customer-service practices are material to consumers because Amazon presents itself as the administrator of marketplace claim, refund, and dispute-resolution processes. Consumers cannot independently verify whether a claim has been approved, whether a refund has been authorized, whether a support request has been created, or whether an item must be preserved for return.

**Amazon's A-to-Z Guarantee Practices Violate California Law**

81. In Plaintiff's case, Amazon represented through customer service that Plaintiff met the requirements for Amazon's A-to-z Guarantee, that a refund would issue within approximately 72 hours or 3–4 days, that Plaintiff should stop communicating with the seller, that return was unnecessary, and that Plaintiff could donate or otherwise dispose of the sofa.

82. Those representations were misleading because Amazon did not issue the promised refund after Plaintiff complied, and Amazon later sent a September 8, 2025 denial notice stating that Plaintiff was "not eligible for a refund under the A-to-z Guarantee."

83. Amazon omitted material facts, including that Plaintiff could lose both the sofa and the purchase price if Amazon later denied or failed to pay the promised refund after Plaintiff disposed of the sofa.

84. Plaintiff reasonably relied on Amazon's statements because Amazon controlled the claim and refund process, Amazon possessed the relevant internal records, and Amazon affirmatively instructed Plaintiff what to do with the sofa.

85. Amazon's conduct is likely to deceive reasonable consumers because consumers would understand Amazon's statements to mean that the refund would actually be paid and that return or preservation of the item was unnecessary.

86. Amazon's conduct is unfair because it shifted the risk of Amazon's own refund nonpayment or internal processing failure onto Plaintiff after inducing Plaintiff to irreversibly relinquish the sofa.

87. Plaintiff seeks restitution, injunctive relief, and all other relief available under California law based on Amazon's misleading refund, return, and disposal representations and

omissions.

88. Amazon continues to operate the same online marketplace, customer-service, refund, claim-handling, call-record, and support-request systems through which Plaintiff received the challenged representations.

**Defendant Intends to Continue to Misrepresent the A-to-Z Guarantee While Failing to Provide Promised Refunds**

89. Amazon's systems remain material to consumers because consumers cannot independently verify Amazon's internal claim notes, refund authorization, support-request status, or whether Amazon will later deny or fail to pay a promised refund.

90. Unless Amazon is required to provide accurate refund, return, disposal, and item-preservation representations, consumers may continue to be exposed to the same risk Plaintiff experienced: being told that return is unnecessary and that a refund will issue, relinquishing the item, and then receiving no refund.

91. Plaintiff still uses Amazon and would consider future Amazon marketplace purchases if Amazon were required to accurately represent claim status, refund status, return obligations, and whether an item must be preserved before any refund is actually issued.

92. Plaintiff does not intend to purchase furniture from Amazon or third-party sellers on Amazon absent reliable, truthful refund and return practices because Amazon's prior conduct prevents Plaintiff from relying on Amazon's post-purchase protection representations.

93. Injunctive relief is necessary to prevent future harm by requiring Amazon to provide truthful, nondeceptive refund and item-disposition guidance and to honor refund commitments communicated to consumers.

94. Plaintiff desires to continue purchasing goods through online marketplaces that provide truthful consumer protection programs and honor approved refunds. However, without an injunction requiring Amazon to accurately represent the operation of the A-to-Z Guarantee and to issue refunds after approving claims, Plaintiff and the Class cannot reasonably rely on Amazon's representations. Amazon's ongoing conduct presents a real and immediate threat of repeated future

injury.

## PLAINTIFF'S EXPERIENCES

95. On June 7, 2025, Plaintiff Devin Rose purchased the URRED Modular Sectional Sofa through Amazon's online marketplace for delivery to his residence in California. The total purchase price was $581.66.

96. The sofa was shipped as a large furniture item in two FedEx boxes. After assembly and attempted use, Plaintiff discovered that the sofa was defective and/or not as described because the back cushions were attached only by thin bottom Velcro strips, tilted forward, and pressed into the user, while the seat cushions collapsed, compressed, felt hollow or underfilled, and caused sinking and sliding.

97. Plaintiff requested a return through Amazon. Amazon accepted the return request on June 11, 2025 and stated that once URRED received the item, Amazon would issue a refund to Plaintiff's original payment method. The return summary identified the return method as "Self ship" and required the item to be sent by July 17, 2025.

98. Plaintiff documented the sofa's defects to the seller through Amazon's messaging system, including detailed August 16 and August 19, 2025 messages and photos describing weak Velcro, shifting and falling cushions, hollow or unsupported cushions, sliding, tilt, gaps, and unusable seating.

99. Plaintiff submitted an Amazon marketplace claim concerning the defective sofa. The claim timeline reflects a July 17, 2025 request, multiple requests for more detail and review entries, denial on August 13, an appeal filed on August 26, and appeal denial on September 8, 2025.

100. On September 3, 2025, Plaintiff spoke with Amazon customer service. Plaintiff was told that he met the requirements for Amazon's A-to-z Guarantee, that a refund would issue within approximately 72 hours or 3–4 days, that Plaintiff should not communicate with the seller any further, that return was unnecessary, and that Plaintiff could donate or otherwise dispose of the sofa. Plaintiff offered to allow Amazon to arrange pickup, but Amazon declined.

101. In reliance on Amazon's statements, Plaintiff had the sofa taken out and left on the

sidewalk near his apartment building where discarded furniture is usually left, approximately the day after the September 3 call.

102. On September 8, 2025, after Plaintiff no longer possessed the sofa, Amazon sent an A-to-z Guarantee denial email stating that Plaintiff was "not eligible for a refund under the A-to-z Guarantee." Plaintiff received no refund.

103. On October 9, 2025, Plaintiff called Amazon again. Amazon representative Rick confirmed that Amazon's records reflected the September 3 call but stated that there were no notes from that call. Plaintiff told Rick what the September 3 representative had said, and Rick apologized, documented the issue, and transferred Plaintiff to a supervisor.

104. Supervisor Lakhbir asked Plaintiff to email proof of the A-to-z claim, acknowledged the screenshot Plaintiff sent, confirmed that the September 3 call concerned the same sofa, lasted approximately 12 minutes, and had no specific notes, and raised a support request for the refund.

105. On October 9, 2025, Amazon sent Plaintiff a written customer-service email stating that a support request for the refund had been raised from the manager's desk, instructing Plaintiff to wait 48–72 hours for an update, and stating that Lakhbir had taken a follow-up to call back with an update. Amazon did not provide the promised follow-up. On October 15, 2025, Plaintiff emailed Amazon: "I still have not received a reply."

106. Plaintiff paid $581.66, received no refund or credit, and lost possession of the sofa after relying on Amazon's representations and instructions. Plaintiff would have kept the sofa had he known Amazon would not issue the promised refund.

## CLASS ACTION ALLEGATIONS

107. Plaintiff brings this action under Federal Rules of Civil Procedure 23(a), 23(b)(2), and 23(b)(3) on behalf of himself and the following proposed class: All persons in the United States who, during the applicable limitations period, in connection with an item purchased on Amazon's online marketplace from a third-party seller, were told by Amazon that Amazon had approved their claim or would issue a refund, were told that the item need not be returned and could be discarded, donated, or otherwise disposed of, and did not timely receive the represented refund (hereinafter the

"Class").

108. In the alternative, Plaintiff seeks certification of such narrower class or subclasses as the Court deems appropriate.

109. Excluded from the Class are Amazon; Amazon's officers, directors, and employees; the Court and its staff; and any person who timely and validly opts out, if an opt-out class is certified.

110. Commonality is satisfied because this action raises common questions of law and fact, including:

a. whether Amazon made materially similar refund and disposal representations to Plaintiff and Class members;
b. whether Amazon's claim-handling, refund, call-record, and support-request processes are centrally controlled and standardized;
c. whether Amazon's statements that claims were approved or that refunds would issue were false or misleading when made;
d. whether Amazon's instructions that items could be discarded, donated, or otherwise not returned were unfair or deceptive when Amazon had not actually ensured payment;
e. whether Amazon's conduct occurred in trade or commerce;
f. whether Amazon's conduct injured other persons or had the capacity to injure other persons;
g. whether Class members suffered injury to business or property;
h. whether Amazon's conduct caused Class members' injuries; and
i. the appropriate form of classwide injunctive and monetary relief.

111. Typicality is satisfied because Plaintiff's claims arise from the same course of conduct as the claims of the proposed Class and are based on the same core legal theories asserted in this Complaint.

112. Adequacy is satisfied because Plaintiff's interests are aligned with those of the proposed Class, and Plaintiff has retained counsel competent and experienced in complex litigation and class actions.

113. Predominance is satisfied because the core liability issues are subject to common proof, including Amazon's internal policies, scripts, training materials, call recordings, call-log fields, claim-status codes, support-request records, refund records, and centralized claim-handling practices.

114. Superiority is satisfied because a class action is superior to individual actions for fairly and efficiently adjudicating this controversy. Many Class members' damages are relatively modest compared to the burden and expense of individual litigation.

115. Certification under Rule 23(b)(2) is also appropriate because Amazon has acted or refused to act on grounds generally applicable to the Class, making final injunctive relief appropriate with respect to the Class as a whole.

## CAUSES OF ACTION

116. Plaintiff does not plead, and hereby disclaims, any independent cause of action under federal statutes or regulations except to the extent expressly invoked herein for jurisdictional or procedural purposes. Plaintiff brings this action under California's False Advertising Law, California's Unfair Competition Law, and Washington's Consumer Protection Act. Any reference to federal standards, policies, or regulatory principles is made only to the extent such standards inform, parallel, or reinforce the state-law duties alleged herein.

## FIRST CAUSE OF ACTION
**Violation of the False Advertising Law**
**[Business And Professions Code Section 17500, Et Seq.]**
**(Against all Defendants)**

117. Plaintiff and the Class hereby incorporate by reference all previous paragraphs of this Complaint as if fully set forth herein and further alleges as follows.

118. At all times relevant, including within four (4) years prior to the filing of this action, Defendant engaged in a systematic course of false and misleading advertising in violation of California Business and Professions Code section 17500 by disseminating untrue and deceptive statements in connection with the sale, delivery, and refund of consumer goods sold through Amazon's online marketplace.

119. Defendant represented through its marketplace, return, claim, and customer-service communications that consumers could rely on Amazon-administered protections when disputes arose with third-party sellers. In Plaintiff's case, Amazon represented that Plaintiff met the requirements for the A-to-z Guarantee or that a full refund would issue, that return was unnecessary, and that Plaintiff could donate or dispose of the sofa.

120. Defendant's representations were false or misleading when made because Amazon failed to issue the promised refund after Plaintiff complied with Amazon's instructions and relinquished possession of the sofa. Amazon later sent a September 8, 2025 denial notice stating that Plaintiff was "not eligible for a refund under the A-to-z Guarantee.".

121. Defendant's statements created the false impression that Plaintiff could safely relinquish the sofa without jeopardizing his refund and that Amazon would honor the refund representation communicated by its customer-service representative.

122. Defendant further omitted material facts from its advertising and consumer communications, including that:

(a) approved A-to-Z claims were frequently not paid;

(b) consumers who disposed of products at Amazon's direction risked permanent loss of both the product and the purchase price; and

(c) Amazon maintained internal practices that allowed refunds to be indefinitely delayed, denied, or ignored without notice to the consumer.

123. Defendant's false and misleading representations were made through Amazon's centralized marketplace, claim-handling, customer-service, call-record, support-request, and refund systems. Those systems give the challenged conduct the capacity to affect other consumers who receive materially similar representations about refund status, return obligations, or item disposal.

124. Plaintiff and the Class reasonably relied on Defendant's advertising and representations regarding the A-to-Z Guarantee. Plaintiff disposed of the sofa only because Defendant affirmatively instructed him to do so and assured him that a full refund was forthcoming. Had Plaintiff known that Defendant would not honor its refund promise, he would not have relinquished the product and would have pursued alternative remedies.

125. Defendant's acts and omissions were likely to deceive, and did deceive, reasonable members of the general public. Defendant's status as a dominant online retailer, combined with the authoritative presentation of the A-to-Z Guarantee as a consumer-protection program, enhanced the deceptive impact of its representations.

126. Defendant benefited from the challenged conduct by retaining Plaintiff's purchase funds while Plaintiff no longer possessed the sofa, and by shifting the risk of Amazon's nonpayment or internal refund-processing failure onto Plaintiff after instructing him that return was unnecessary.

127. As a direct and proximate result of Defendant's false advertising, Plaintiff and Class members suffered injury in fact and lost money and/or property, including but not limited to the purchase price of undelivered or refunded goods, consequential financial harm, and loss of the product itself. Plaintiff's damages and those of the Class will be proven at trial.

128. Defendant's conduct constitutes false advertising within the meaning of Business and Professions Code section 17500 because Defendant knowingly or negligently made statements that were untrue or misleading and that were disseminated to the public for the purpose of inducing purchases and deterring refund demands.

129. Plaintiff seeks restitution on behalf of himself and the Class of all monies wrongfully obtained or retained by Defendant as a result of the false advertising described herein, together with pre- and post-judgment interest as permitted by law.

130. Plaintiff further seeks a declaration that Defendant's acts and practices constitute false, misleading, and deceptive advertising in violation of the False Advertising Law.

131. Plaintiff also seeks injunctive relief prohibiting Defendant from continuing to:

(a) advertise or represent that its A-to-Z Guarantee provides assured refunds when it does not;

(b) instruct consumers to dispose of products before refunds are issued; and

(c) delay, deny, or ignore refunds after claims have been approved.

Absent injunctive relief, Defendant will continue to mislead California consumers and retain funds through unlawful means.

**SECOND CAUSE OF ACTION**
**(Unlawful, unfair, and fraudulent trade practices violation of Bus. & Prof. Code §17200, *et seq.*)**

(Against All Defendants)

132. Plaintiff repeats and realleges every allegation set forth in the preceding paragraphs.

133. Within four (4) years preceding the filing of this lawsuit, and at all times mentioned herein, Defendant has engaged, and continues to engage, in unlawful, unfair, and fraudulent trade practices in California by engaging in the unlawful, unfair, and fraudulent business practices outlined in this Complaint.

134. Defendant's conduct is unlawful within the meaning of the UCL because it violates the False Advertising Law (Bus. & Prof. Code § 17500 et seq.) and California's public policy requiring truthful representations and fair refund practices in consumer transactions.

135. Defendant represented that Amazon's marketplace protection and claim process provided reliable protection and prompt refund relief when communicated by Amazon customer service, while in Plaintiff's case Amazon failed to issue the represented refund after telling Plaintiff that return was unnecessary and that he could relinquish the sofa.

136. Defendant's conduct is unfair within the meaning of section 17200. Defendant's practice of representing that a refund will issue, directing a consumer to relinquish possession of the product, and then failing to pay the refund causes substantial consumer injury that consumers cannot reasonably avoid and that provides no countervailing benefit to consumers or competition.

137. Defendant's unfair practices include, without limitation:

(a) approving refund claims while failing to issue payment;

(b) instructing consumers to dispose of products before refunds are processed;

(c) failing to provide written confirmation, refund timelines, or meaningful follow-up; and

(d) failing to provide the promised 48–72 hour update or follow-up call after raising a refund support request from a manager's desk.

These practices are documented by Plaintiff's order records and Amazon customer-service communications, including the October 9, 2025 call transcript.

138. Defendant's conduct is fraudulent within the meaning of the UCL because it was likely to deceive reasonable consumers. Amazon's customer-service representations conveyed that Plaintiff would receive a refund and could safely dispose of the sofa without return or pickup. Those

representations were false or misleading because Amazon later denied the claim and did not issue the refund.

139. Defendant's fraudulent practices are further demonstrated by the standardized manner in which Plaintiff's A-to-Z Guarantee claim was handled, including approval of the claim, instructions to dispose of the product, repeated assurances that a refund would be issued, and prolonged nonpayment. On information and belief, this sequence reflects a systemic breakdown or deliberate practice within Amazon's A-to-Z Guarantee process rather than an isolated error.

140. Plaintiff and members of the Class reasonably relied on Defendant's unlawful, unfair, and fraudulent practices. Plaintiff disposed of the sofa solely because Defendant informed him that his claim was approved and that a full refund would be issued within days. Had Plaintiff known the refund would not be honored, he would not have relinquished the product and would have pursued alternative remedies.

141. Defendant's acts and omissions were likely to deceive, and did deceive, members of the general public acting reasonably under the circumstances. Defendant's dominance in e-commerce and the authoritative presentation of the A-to-Z Guarantee magnified the deceptive impact of its conduct.

142. As a direct and proximate result of Defendant's conduct, Plaintiff and the Class suffered injury in fact and lost money and/or property, including the purchase price of products for which refunds were represented but not issued and the loss of products relinquished in reliance on Amazon's instructions.

143. Plaintiff seeks equitable relief on behalf of himself and the Class, including restitution of all monies wrongfully obtained or retained by Defendant as a result of the challenged conduct. Plaintiff and the Class lack an adequate remedy at law to recover these losses or to halt Defendant's ongoing misconduct. Plaintiff further seeks injunctive relief prohibiting Defendant from continuing to misrepresent the nature, reliability, and operation of its A-to-Z Guarantee, including prohibiting Defendant from instructing consumers to dispose of products before refunds are actually issued. Plaintiff seeks a declaration that Defendant's conduct as alleged constitutes unlawful, unfair, and fraudulent business practices in violation of Business and Professions Code

section 17200. Unless enjoined by this Court, Defendant will continue to engage in the challenged conduct, causing ongoing harm to California consumers. Injunctive relief is therefore necessary to protect the public and to ensure Defendant's future compliance with California law.

## THIRD CAUSE OF ACTION
**(Washington Consumer Protection Act, RCW §§ 19.86.020, 19.86.090, and 19.86.093)**

(Against All Defendants)

144. Plaintiff repeats and realleges every allegation set forth in the preceding paragraphs.

145. RCW 19.86.020 prohibits unfair or deceptive acts or practices in the conduct of trade or commerce.

146. RCW 19.86.090 authorizes any person injured in his or her business or property by a violation of RCW 19.86.020 to bring an action to recover actual damages, obtain injunctive relief, and recover costs and reasonable attorneys' fees, and authorizes discretionary trebling up to the statutory cap.

147. Amazon engaged in unfair or deceptive acts or practices by, among other things:

a. telling Plaintiff that Amazon had approved his claim, or would issue a full refund, when Amazon had not actually ensured such payment;

b. telling Plaintiff that he should stop dealing with the seller;

c. telling Plaintiff that he did not need to return the sofa;

d. instructing Plaintiff that he could discard or donate the sofa;

e. omitting that Plaintiff could lose both the sofa and the purchase price if Amazon later denied or failed to pay the promised refund;

f. raising a support request and promising a 48–72 hour update and follow-up call, then failing to follow through; and

g. using centralized claim-handling and customer-service practices that had the capacity to injure other consumers in the same way.

148. The foregoing acts and omissions had the capacity to deceive a substantial portion of the public because reasonable consumers in Plaintiff's position would understand Amazon's

statements to mean that Amazon had taken over the dispute, that the consumer could safely dispose of the item, and that the refund would actually be paid.

149. Amazon's conduct was unfair as well as deceptive because Amazon induced Plaintiff to irreversibly part with the sofa while retaining the purchase price and while withholding the material risk of nonpayment.

150. Amazon's conduct occurred in the conduct of trade or commerce. Amazon made the challenged statements and omissions in connection with its operation of the Amazon marketplace, its post-purchase customer-service functions, its claim-handling systems, and its refund administration.

151. Amazon's conduct impacts the public interest.

152. Amazon's challenged acts occurred in the ordinary course of Amazon's business and through standardized marketplace, customer-service, claim-handling, and support-request systems.

153. Amazon's challenged acts injured other persons and/or had the capacity to injure other persons because Amazon uses common and centralized policies, call handling, refund systems, and supervisory escalation processes in connection with marketplace claims.

154. The conduct described herein is capable of repetition because Amazon continues to operate the same marketplace and customer-service systems and continues to communicate with consumers about claim approval, refund status, return obligations, and disposal of disputed items.

155. The public-interest impact is further supported by Amazon's centralized and standardized marketplace, claim-handling, call-record, refund, customer-service, and supervisory escalation systems, which make the challenged conduct capable of repetition and capable of injuring other consumers in substantially the same way.

156. Plaintiff suffered injury to his business or property.

157. Specifically, Plaintiff lost at least $581.66, the purchase price of the sofa, and lost the sofa itself after disposing of it in reliance on Amazon's representations and instructions.

158. Plaintiff's injury is economic and concerns business or property. Plaintiff does not seek relief in this action for personal injury, emotional distress, or other nonproperty harms.

159. Amazon's unfair and deceptive acts and omissions directly and proximately caused Plaintiff's injury.

160. If Amazon had not represented that the claim had been approved or that a full refund would issue, had not told Plaintiff to stop dealing with the seller, had not told Plaintiff that return was unnecessary, and had not instructed Plaintiff that he could discard or donate the sofa, Plaintiff would not have disposed of the sofa and would have preserved it or pursued other steps to protect himself from loss.

161. Amazon's October 9 support-request promise and 48–72 hour update further confirmed that Amazon recognized Plaintiff's refund issue as unresolved, yet Amazon still failed to provide the promised follow-up, failed to reconcile the September 3 representations with the September 8 denial, and failed to issue the refund.

162. Plaintiff's losses were the natural, foreseeable, and direct result of Amazon's conduct.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff and the Class respectfully request that the Court enter judgment against Defendants as follows:

A. Certifying this action as a class action under Rule 23, appointing Plaintiff as Class Representative, and appointing Plaintiff's counsel as Class Counsel;

B. Declaring that Amazon's conduct alleged herein violates the Washington Consumer Protection Act, RCW 19.86.020;

C. Awarding injunctive relief under RCW 19.86.090 prohibiting Amazon from continuing the unfair and deceptive practices alleged herein, including but not limited to instructing consumers to discard, donate, or otherwise relinquish disputed items while failing to ensure that the represented refunds are actually issued, and requiring truthful disclosures regarding claim status, refund status, and item-preservation obligations;

D. Awarding Plaintiff and the Class costs of suit and reasonable attorneys' fees under RCW 19.86.090;

E. Awarding discretionary treble damages under RCW 19.86.090 up to the statutory limit;

F. An order temporarily and permanently enjoining Defendant from continuing the unlawful, deceptive, fraudulent, and unfair business practices alleged in this Complaint;

G. An award of compensatory damages in an amount to be determined at trial, except for those causes of action where compensatory damages are not legally available;

H. An award of statutory damages in an amount to be determined at trial, except for those causes of action where statutory damages are not legally available;

I. An award of punitive damages in an amount to be determined at trial, except for those causes of action where punitive damages are not legally available;

J. An award of treble damages, except for those causes of action where treble damages are not legally available;

K. An award of restitution in an amount to be determined at trial;

L. An order requiring Defendant to pay both pre- and post-judgment interest on any amounts awarded;

M. For reasonable attorneys' fees and the costs of suit incurred; and

N. For such further relief as this Court may deem just and proper.

**JURY DEMAND**

Plaintiff and the Class demand a trial by jury on all issues so triable as a matter of right.

**POTTER HANDY LLP**

/s/ James M. Treglio

Dated: June 8, 2026 By: ______________________

Mark D. Potter, Esq.
James M. Treglio, Esq.
Isabel Rose Masanque, Esq.
Attorneys for the Plaintiff and the Class